IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DOTTIE M. DAVIS                                                                                    PLAINTIFF

V.                                        NO. 13-2170

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Dottie M. Davis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on April 12, 2010, alleging inability to work since September 29, 2009, due to nerve damage to her left ankle, high blood pressure, asthma, fibroidal cyst disease, and heart murmur. (Tr. 120-121,139, 155). An administrative hearing was held on September 6, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 34-57).

-1-

By written decision dated January 27, 2012, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe: hypertension; left leg/ankle pain status post multiple fractures; major depression, single episode, moderate to severe without psychosis; antisocial traits; and obesity. (Tr. 21). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. Work is limited to simple, routine, and repetitive tasks involving only simple, work related decisions with few if any work place changes and no more than incidental contact with coworkers, supervisors, and the general public.

(Tr. 23). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but there were other jobs that Plaintiff would be able to perform, such as machine tender, assembly jobs, and inspector. (Tr. 27-28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 19, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.    Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ's RFC finding is contrary to the evidence; and 2) Plaintiff cannot perform the jobs identified by the ALJ at Step Five. (Doc. 12).

**A.    RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a

medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff contends that in his decision, the ALJ merely stated that the opinion of Plaintiff's treating physician, Dr. George Howell, was not supported by objective findings and did not state how much weight he was giving Dr. Howell's opinion, and did not give "good reasons" or "specific reasons" for his decision.

Plaintiff began going to the emergency rooms of Sparks Regional Medical Center and St. Edwards Mercy Medical Center in September of 2008, complaining of various ailments. This was in addition to her visits to her various treating physicians. In 2008, beginning in September, Plaintiff made ten visits to the emergency rooms.(Tr. 270, 272, 275, 279, 401, 404, 408, 411, 414, 417). In 2009, Plaintiff made thirty trips to the emergency rooms. (Tr. 222, 230, 235, 240, 243, 247, 250, 253, 256, 260, 264, 266, 313, 316, 321, 325, 331, 343, 348, 352, 357, 363, 366, 370, 375, 379,384, 388, 395, 398). In 2010, Plaintiff made thirteen trips to the emergency rooms (Tr. 283, 286, 290, 293, 297, 302, 307, 310, 460, 466, 476, 489, 497). In 2011, Plaintiff made two trips to the emergency rooms, prior to the hearing before the ALJ. (Tr. 505, 513). On more than one occasion during her emergency room visits, it was noted that Plaintiff had made multiple emergency room visits for pain (Tr. 318, 292, 298), and on one occasion, was reported as a "Known ER abuser for sev. yrs." (Tr. 311).

On February 3, 2010, Plaintiff began seeing Dr. George Howell at the Wellness Clinic

of Roland, at which time she complained of left ankle pain. (Tr. 553). On October 13, 2010, a report from the Wellness Clinic reported that Plaintiff had decreased range of motion of the cervical, thoracic and lumbar spine with tenderness to palpate and decreased ability secondary to pain in the left foot. (Tr. 455). The diagnostics were reported as follows:

> 1. X-ray, 8-11-08, nondisplaced acute fracture of the left distal fibula.
> 2. No surgery secondary to not having any insurance or the ability to pay for that.

(Tr. 455). This was repeated on November 10, 2010 (Tr. 453); December 8, 2010 (Tr. 451); January 5, 2011 (Tr. 449); February 2, 2011 (Tr. 571); March 30, 2011 (Tr. 522); April 27, 2011 (Tr. 524); May 25, 2011 (Tr. 578); June 22, 2011 (Tr. 580); July 20, 2011 (Tr. 582); August 17, 2011 (Tr. 584); and September 14, 2011 (Tr. 586).

On August 11, 2010, a Physical RFC Assessment was completed by non-examining physician, Dr. Alice M. Davidson, wherein she concluded that Plaintiff would be able to perform light work. (Tr. 438-445).

On February 2, 2011, Dr. Howell completed a Physical RFC Evaluation. (Tr. 526-528). In the evaluation, he opined that Plaintiff: could sit for 2 hours at one time and for 6 hours total during an entire 8-hour workday; needed assistive devices to stand and walk; needed rest breaks at hourly intervals or less; could continuously lift 0-5 lbs.; frequently lift 6-10 lbs.; occasionally lift 11-20 lbs.; rarely lift 21-25 lbs.; never lift over 25 lbs.; could occasionally carry up to 10 lbs.; rarely carry 11-25 lbs.; and never carry over 25 lbs. (Tr. 526). Dr. Howell further opined that Plaintiff's lower extremities were limited, and her legs should be elevated when she was seated; that Plaintiff could frequently push/pull; could occasionally work in an extended position, work above shoulder level, and reach; could rarely work overhead; could use both hands continuously

-6-

for grasping, fingering/fine manipulation; could occasionally bend; could rarely squat, crawl, stoop, crouch, kneel, balance, twist, and climb stairs; could never climb ladders, ramps, or scaffolds; should completely avoid unprotected heights and dangerous moving machinery and exposure to high noise levels; had limitation on fine visual acuity; could have mild exposure to extremes and sudden or frequent changes in temperature and/or humidity; could have mild exposure to respiratory irritants; had marked limitations in ambulatory/standing; and her current condition/status was adversely affected by body mass (overweight). (Tr. 526-528).

On October 19, 2011, Plaintiff was seen by Dr. Ted Honghiran for an orthopaedic examination, as directed by the ALJ. (Tr. 535-536). In his report, Dr. Honghiran noted that Plaintiff was markedly overweight, that she walked with a severe limp on her left foot, and used a cane to walk. (Tr. 535). The examination of her left foot showed no evidence of acute swelling. (Tr. 535). Plaintiff was reported as having painful range of motion of the left ankle and could flex it only 20 degrees. (Tr. 535). However, Dr. Honghiran noted that Plaintiff had no obvious swelling or deformity of her left foot, that the range of motion of her knee and hip was complete, that the circulation and sensation in her foot was intact, and that no muscle atrophy or muscle spasms were noted. (Tr. 536). Dr. Honghiran noted that x-rays of Plaintiff's left ankle showed a normal left ankle. (Tr. 536). Dr. Honghiran's impression was as follows:

> It is my impression that this lady has a history of having multiple fractures of the left foot with chronic pain, which I do not know why. Basically her x-rays showed no severe signs of arthritis. If the fracture had been there it is completely healed in good alignment.

(Tr. 536). Dr. Honghiran reported that Plaintiff was living with her boyfriend and claimed she was not able to work, but "she should be able to do a type of work so that she can sit down and

AO72A
(Rev. 8/82)

use her hands." (Tr. 536).

It is noteworthy that on November 2, 2011, Plaintiff underwent a Mental Diagnostic Evaluation, at the direction of the ALJ, by Patricia J. Walz, Ph.D. (Tr. 540-544). Dr. Walz noted that Plaintiff walked with a straight metal cane and "grunted and groaned" as she ambulated. (Tr. 540). Dr. Walz reported that Plaintiff last worked on September 29, 2010, and was fired from Proclean janitorial because, "It was a theft and I got blamed for it." (Tr. 540). Dr. Walz reported that Plaintiff needed no assistance with her activities of daily living, and that her cane was not prescribed by a doctor, but that her doctor said she probably should get one because she was having so many problems with her ankle. (Tr. 542). Dr. Walz reported that Plaintiff weighed 335 pounds and was 5'7" tall. (Tr. 542). Plaintiff underwent a Computerized Assessment of Response Bias (CARB), which Dr. Walz reported suggested "very poor effort and probable deliberate attempt to exaggerate or malinger." Dr. Walz diagnosed Plaintiff as follows:

> Axis I:   Major depression, single episode, moderate to severe without psychosis
> Probable Malingering of Memory Deficits
> Axis II:  Antisocial Traits
> Axis V/GAF: 50 to 60

(Tr. 543). Dr. Walz concluded that Plaintiff's performance on CARB suggested extreme exaggeration, and that "[i]t is almost certain that litigation or other issues of primary or secondary gain are motivating factors in this individual's response bias." (Tr. 544). Dr. Walz also completed a Medical Source Statement of Ability to do work-related activities (mental), noting no marked limitations in any area. (Tr. 546-547).

In his decision, the ALJ concluded that Plaintiff was capable of performing sedentary, unskilled work with certain postural limitations. (Tr. 23). In reaching this conclusion, the ALJ

considered the entire record. He recognized that it was reasonable to assume that Plaintiff experienced some limitations due to her impairments, but that the degree to which they were functionally limiting was an issue which was very much open to question. (Tr. 23). The ALJ questioned Plaintiff's credibility throughout the record, noting her frequent ER visits; Dr. Honghiran's opinion that Plaintiff's left ankle x-rays were normal and showed no severe signs of fracture or arthritis; and Dr. Walz's diagnosis of probable malingering and her performance profile suggesting extreme exaggeration. (Tr. 24). The ALJ also discussed Plaintiff's obesity, and discussed Dr. Howell's opinion that Plaintiff's current condition was adversely affected by being overweight. (Tr. 25-26). The ALJ found Plaintiff's obesity to be a severe impairment and that it clearly contributed to the severity of her condition and resulted in limited mobility and increased health risk. (Tr. 26). The ALJ concluded that her obesity and any related limitations were not severe to a degree that would limit activities beyond the scope of his RFC of sedentary, unskilled work. (Tr. 26).

The ALJ also considered Plaintiff's subjective pain and discomfort, and found that although some degree of pain was substantiated by the record, Plaintiff's relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of his RFC determination. (Tr. 26).

After discussing the record, the ALJ found that the physical RFC evaluation completed by Dr. Howell on February 2, 2011, "is not supported by the objective findings in the medical evidence of record with regard to the claimant's physical limitations and capabilities." (Tr. 27). The ALJ then gave significant weight to the mental RFC evaluation provided by Dr. Walz on November 2, 2011, and concurred with the opinions of the state agency consultants who

provided assessments at the initial and reconsideration levels and noted they also supported a finding of "not disabled." (Tr. 27).

"An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012)(quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). While the ALJ was required to develop the record fully, he was not required to provide an "in-depth analysis on each piece of evidence." Renstrom, 680 F.3d at 1065. While it might have been better had the ALJ made more specific findings regarding Dr. Howell's opinion and the weight he gave it, it is clear that his decision reflects that he fully reviewed, considered, and weighed all the evidence of record, including Dr. Howell's opinion, in assessing Plaintiff's RFC. In addition, the opinion of Dr. Walz, suggesting Plaintiff exaggerated excessively and was a malingerer, coupled with Dr. Honhrihan's opinion, add more credence to the fact that considering the record as a whole, the ALJ's RFC determination that Plaintiff could perform unskilled, sedentary work is supported by substantial evidence.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

**B.     Step Five Determination:**

Plaintiff contends the hypothetical question posed to the VE was lacking. The hypothetical question posed to the VE is as follows:

> Q. Let me ask you to consider please someone with the claimant's same age, education, and work experience, who can do no more than light work, can occasionally climb ramps or stairs, never climb ladders, ropes,

or scaffolds, occasionally balance, stoop, kneel, crouch, or crawl, work would be limited to simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes, and no more than incidental contact with coworkers, supervisors, and the general public. Could the individual with those limits perform any of the claimant's past work?
A. The only one the individual would be able to perform would be the mold operator job.
P. 54 - Q. Let me ask you to consider someone – exact same limitations except instead of light, it's sedentary. Could an individual with those limits perform any of the claimant's past work?
A. No, sir.
Q. Any other work available?
A. There are some sedentary jobs that such an individual could perform. There are sedentary unskilled machine tender jobs....There are sedentary unskilled assembly jobs. ...There are also some inspector jobs at the sedentary level.

(Tr. 53-54).

The hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as machine tender, assembly job, or inspector jobs. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV. Conclusion:**

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby

AO72A
(Rev. 8/82)

affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 1st day of July, 2014.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)